# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SUSAN DOMINGUEZ,<br><br>    Plaintiff,<br>        v.<br><br>LOS ANGELES COUNTY CALIFORNIA SHERIFF DEPARTMENT; JIM MCDONNELL in his official capacity as head of the Sheriff Department; LOS ANGELES COUNTY SHERIFF DEPUTY HANK ORTEGA in his official capacity; LOS ANGELES COUNTY SHERIFF DEPUTY CURTIS A JENSON in his official capacity; LOS ANGELES COUNTY SHERIFF DEPUTY LINCONA also known by I.D. No 60666 in his official capacity; LOS ANGELES COUNTY COUNCIL; MARK C. WICKHAM in his official capacity as head of Los Angeles County Counsels offices; DANIEL YBARRA as an individual Defendant; and DOES 1-30, Inclusive,<br><br>    Defendants. | CASE NO. CV 18-371-GW(AGRx)<br><br>[Assigned to Hon. George H. Wu, Courtroom "9D"]<br><br>**ORDER GRANTING DEFENDANTS LOS ANGELES COUNTY SHERIFF'S DEPARTMENT AND DEPUTY JEREMY LICONA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Date:   May 3, 2018<br>Time:  8:30 a.m.<br>Crtrm.: "9D" |

-1-

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

On May 3, 2018 at 8:30 a.m. in Courtroom "9D" of the above-entitled court, this Court heard defendants LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and DEPUTY JEREMY LICONA's (collectively "County Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint, alleging claims for 42 U.S.C. § 1983 and Negligence against County Defendants, pursuant to *Federal Rule of Civil Procedure*, Rule 12(b)(6). All appearances are noted on the record.

After full consideration of the points and authorities submitted by the parties, and oral arguments of counsel, the Court adopted the attached tentative ruling and granted the County Defendants' Motion without leave to amend, and remanded the remaining two causes of action for Battery and Construction Eviction against defendant DANIEL YBARRA back to state court.

**THEREFORE, IT IS HEREBY ORDERED** that the Court GRANTS defendants LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and JEREMY LICONA's Motion to Dismiss Plaintiff's Second Amended Complaint, alleging claims for 42 U.S.C. § 1983 and Negligence against County Defendants, in its entirety without leave to amend, and dismisses the case against the County Defendants with prejudice. The remaining two causes of action for Battery and Construction Eviction against defendant DANIEL YBARRA are remanded back to state court.

IT IS SO ORDERED.

DATED: May 16, 2018

_____
GEORGE H. WU, U.S. District Judge

<u>*Susan Dominguez v. LA Cty. Sheriff's Dept., et al.*</u>; Case No. 2:18-cv-371-GW-(AGRx)
Tentative Ruling on Motion to Dismiss

## I. Background

Plaintiff Susan Dominguez brings this action against Defendants: 1) Los Angeles County Sherriff's Department ("LACSD"), 2) Jeremy Licona, a LACSD Deputy Sherriff, and 3) Daniel Ybarra.[1] *See generally* Second Amended Complaint ("SAC"), Docket No. 20. Plaintiff raises four causes of action: 1) a due process violation pursuant to 42 U.S.C. § 1983, 2) negligence, 3) battery, and 4) constructive eviction. *See id.* The Court previously dismissed Plaintiff's First Amended Complaint upon Defendants' motion. *See generally* Civil Minutes ("Dismissal Order"), Docket No. 19.[2]

Plaintiff pleads the following relevant facts:

Plaintiff resided at a property owned by Ybarra with whom she also "maintained a relationship in cohabitation." SAC ¶ 11. In or about November 2016, Plaintiff's relationship with Ybarra began deteriorating. *Id.* ¶ 12. Ybarra took action to make Plaintiff uncomfortable, including removing locks, playing loud music, and turning off the water. *Id.* On or about December 31, 2016, Ybarra physically assaulted Plaintiff, causing her physical injury. *Id.* ¶ 13. Plaintiff followed Ybarra outside the residence after this assault and "a man whom Plaintiff did not know handed Plaintiff eviction papers." *Id.* LACSD Deputy Sheriffs, including Licona, then came to the residence. *Id.* ¶ 14. Licona had been to the residence on at least three prior occasions in 2016, but none of those visits involved allegations of physical violence or abuse. *Id.* ¶ 24. On the last of these visits, Licona asked Plaintiff why she didn't leave and stated that he "can't be coming out here." *Id.*

Upon arriving at the residence on December 31, 2016, the LACSD Deputy Sheriffs placed Ybarra in the back of a police vehicle and Plaintiff was told that Ybarra would be arrested. *Id.* ¶ 25. Ybarra was not arrested, however. *Id.* Plaintiff was offered medical care but refused and left the residence. *Id.* Plaintiff returned the following day to discover that the locks

---

[1] Plaintiff also sues a number of Doe Defendants, which the Court ignores in its analysis here.

[2] In so doing the Court dismissed defendants Jim McDonnell, the Los Angeles County Sherriff; Hank Ortega, a LACSD Deputy Sherriff; Curtis Jensen, a LACSD Deputy Sherriff; the Los Angeles Office of the County Counsel; and Mary Wickham, the Los Angeles County Counsel (wrongfully sued as Mark Wickham).

had been changed. *Id.* ¶ 16. Plaintiff contacted the LACSD and was told that it would take no action because Ybarra was not home. *Id.* On or about January 2, 2017, Plaintiff returned to the residence and Ybarra threatened her with a metal pipe. *Id.* ¶ 17. LACSD Deputy Sheriffs, including Licona, arrived shortly thereafter and ordered Plaintiff to leave and stay away from the residence or she would be arrested. *Id.* ¶ 18. Plaintiff told the LACSD Deputy Sheriffs that she was injured due to a work-related injury and needed to retrieve medications from the residence. *Id.* ¶ 19. She was given five minutes to do so but, when she entered the residence escorted by one of the officers, she was unable to find the medications because all of her belongings had been "packed into plastic bags." *Id.* Plaintiff was unaware that her belongings had been packed into plastic bags until she entered the residence. *Id.* Plaintiff complained that she would need more time to retrieve her medications but the LACSD Deputy Sheriffs yelled at her and ordered her to leave. *Id.* At that point Licona handed Plaintiff an Emergency Protective Order ("EPO"). *Id.* ¶ 20. Plaintiff asked Licona why she was being ordered to leave if no eviction order had been issued and Licona responded by instructing Plaintiff that she would be arrested if she did not leave. *Id.* The EPO was premised on Ybarra's allegation that "Plaintiff was associated with or had ties with the motorcycle gang known as the 'Mongols' and that [Ybarra] feared for his life" as a result. *Id.* ¶ 21. Plaintiff denies that she "threatened Ybarra with the Mongols." *Id.* ¶ 22. Plaintiff and Ybarra both "knew people who were affiliated with that group" and Ybarra rode his motorcycle with at least one person affiliated with the Mongols. *Id.*

At some time after January 2, 2017, Plaintiff arranged with Ybarra for her to retrieve her belongings. *Id.* ¶ 23. When she arrived to do so, Ybarra refused to allow the movers Plaintiff hired to enter the property. *Id.* Licona again came to the property but "did not do anything to permit the movers to move Plaintiff's belongings." *Id.* Plaintiff contacted a LACSD Watch Commander and Licona then intervened and spoke with Ybarra. *Id.* Ybarra moved Plaintiff's belongings to the street and from there the movers loaded her belongings onto a truck. *Id.*

LACSD and Licona move to dismiss the SAC. *See generally* Motion to Dismiss SAC ("Motion"), Docket No. 21. On April 19, 2018, Plaintiff filed her opposition to the Motion, a week after it was due. *See generally* Opposition to Motion ("Opp'n"), Docket No. 24; *see also* C.D. Cal. Local Rule 7-9 (requiring a written opposition be filed "not later than twenty-one days before the date designated for the hearing of the motion"). The Court may treat Plaintiff's failure to timely file as consent to the granting of the Motion. *See* C.D. Cal. Local Rule 7-12. The

Court would grant the Motion on that basis alone but will nonetheless consider the merits of the Motion, and the arguments Plaintiff advances in her late-filed opposition.

## II. Legal Standards

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a Rule 12(b)(6) motion has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

## III. Discussion

### A. First Cause of Action: 42 U.S.C. § 1983

In her first cause of action, Plaintiff alleges that Licona violated her constitutional right to due process by denying her "free access to her home and free access and use of her personal belongings without unjustified interference." SAC ¶ 29. The claim is predicated on Licona's

"issuance" of the EPO, which Plaintiff describes as a "de facto eviction." *Id.* ¶ 30. Plaintiff cites the California Domestic Violence Prevention Act ("DVPA"), Cal. Family Code §§ 6200, *et seq.*, and states that Licona did not have reasonable grounds pursuant to the statute to seek an EPO because Ybarra's allegation that Plaintiff was associated with or had ties to the Mongols − which caused Ybarra to report that he feared for his life − did not provide justification.[3] *See id.* ¶¶ 33-34.

Plaintiff's allegations (in regards to Ybarra's report being inadequate for Licona to seek an EPO) are insufficient. Cal. Family Code § 6220 states "The purpose of [the DVPA] is to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence."). Here, Plaintiff's SAC operates under the misapprehension that a policeman (such as Licona) issues the EPO (*see e.g.* SAC at ¶¶ 32-33) when, in fact and as a matter of law, EPO's are issued by a judge after a presentation by a law enforcement officer. *See* footnote 3, *supra*. Also, while Plaintiff contends that Licona did not have reasonable grounds to believe that Ybarra was in any immediate and present danger of abuse, Plaintiff in the SAC concedes that: (1) Ybarra did make certain statements to Licona regarding his fear for his own safety, and (2) Licona took those statements on the face value. *Id.* ¶¶ 34-35.

---

[3] The DVPA provides for the issuance of EPOs on an emergency *ex parte* basis. *See generally* Cal. Fam. Code § 6250. Where domestic violence is suspected, an EPO may issue only at the request of a "law enforcement officer" (as defined by Cal. Fam. Code § 6240(b)) who asserts "reasonable grounds" to believe a person is in "immediate and present danger of domestic violence." *See* Cal. Fam. Code § 6250(a). "Upon responding to a situation where there may be grounds for an [EPO], the officer must inform the person for whom the order may be sought . . . that he or she may ask the officer to request the [EPO]." Hogoboom & King, *Cal. Prac. Guide: Family Law* (The Rutter Group 2017) § 5:261 at 5-138 (citing Cal. Fam. Code § 6275(a)). "An officer *shall* request an [EPO] if the officer believes that the person requesting an [EPO] is in immediate and present danger." Cal. Fam. Code § 6275(b) (emphasis added). The officer requests an EPO from a judicial officer. *See* Cal. Fam. Code § 6250. An EPO will only be issued if the judicial officer finds: 1) that reasonable grounds have been asserted to believe that an immediate and present danger of domestic violence exists; and 2) that the EPO is necessary to prevent the occurrence or reoccurrence of domestic violence. *See* Cal. Fam. Code § 6251. While an officer may apply for an EPO orally, including over the telephone, a law enforcement officer who requests an EPO "shall reduce the order to writing and sign it." *See* Cal. Fam. Code § 6270. The written EPO must include a statement of the grounds asserted for its issuance, the date and time it expires, the address of the superior court for the district or county in which the endangered person resides, and specific statutory warnings to both the endangered person and the restrained person, printed in both English and Spanish. *See* Cal. Fam. Code § 6253. Once reduced to writing, the officer must serve a copy of the application and the EPO on the restrained person, give a copy of the EPO to the protected person, and file a copy of the EPO with the issuing court. *See* Cal. Fam. Code § 6271. "A law enforcement officer shall use every reasonable means to enforce an [EPO]." *See* Cal. Fam. Code § 6272(a). "A law enforcement officer who acts in good faith to enforce an [EPO] is not civilly or criminally liable." *See* Cal. Fam. Code § 6272(b).

4

Additionally, even if the Court accepts that Licona lacked sufficient credible information to initiate the EPO action, Plaintiff's cause of action as alleged fails as a matter of law. Pursuant to Cal. Family Code § 6250, "a judicial officer" may issue an EPO "where a law enforcement officer asserts reasonable grounds" in accordance with the statute. In other words, the law enforcement officer doesn't himself issue the EPO but instead applies to a judicial officer who independently evaluates the officer's presentation and decides whether to issue the EPO. *See id.* The Ninth Circuit has held that in Section 1983 cases "a judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's decision." *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007). In that case, officers were held to be entitled to summary judgment because the plaintiff could not show that the officers "deliberately or recklessly misled" the judicial officer who set plaintiff's one million dollars bail. *Id.* at 664.

Here, Plaintiff does not allege that Licona misled the judicial officer that issued the EPO. To the contrary, Plaintiff argues that "Licona's decision to inform the judicial officer that Ybarra told him that plaintiff was associated with the Mongol motorcycle gang was not objectively reasonable because there was no <u>threat</u>. Simply knowing a member or members of a group, *e.g.* Mongols, cannot possibly be considered *reasonable* grounds to believe that there is <u>*immediate and present danger*</u> of domestic violence." Opp'n at 6 (emphasis in original). Put differently, Plaintiff alleges that Licona should not have sought the EPO from a judicial officer. But the Ninth Circuit is clear that even if so, the judicial officer's independent judgment in that situation absolves Licona of liability absent an allegation that Licona misled the judicial officer. *See Galen*, 477 F.3d at 663. Plaintiff has made no such allegation (in fact, she has averred entirely differently) and, as a result, her first cause of action fails.

B. Second Cause of Action: Negligence

In her second cause of action, Plaintiff alleges that Licona was negligent in seeking the EPO. *See* SAC ¶¶ 41-46. Licona moves to dismiss, arguing that he is immune pursuant to Cal. Government Code § 821.6 and, alternatively, Cal. Family Code § 6272. Cal. Government Code § 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Plaintiff argues that "[t]he 'prosecutorial' immunity under Government Code § 821.6 does not apply because it is limited to malicious

prosecution claims." Opp'n at 6. California courts have held precisely the opposite: "[S]ection 821.6 is not limited to only malicious prosecution actions." *Jenkins v. Cty. of Orange*, 212 Cal. App. 3d 278, 283 (1989); *see also Martinez v. City of Los Angeles*, 141 F.3d 1373, 1382 (9th Cir. 1998) ("The same immunity which protects the officers from malicious prosecution protects them from liability for a negligent investigation which leads to an arrest."). In *Jenkins*, the plaintiff alleged that social workers had failed to use due care by not thoroughly investigating a report of suspected child abuse, by failing and refusing to weigh and present all the evidence, and by misrepresenting evidence to the juvenile court in a dependency proceeding. 212 Cal. App. 3d at 282. Even though the social workers' actions resulted in a young child's removal from his mother's home, the court nonetheless found them absolutely immune pursuant to Cal. Government Code § 821.6 because investigating child abuse was within the scope of their employment. *Id.* at 284. The claims here are analogous to those presented in *Jenkins* − Plaintiff alleges that Licona breached his duties to investigate the allegations made by [Ybarra], to only seek an EPO upon reasonable grounds, and to enforce the EPO in good faith. *See* SAC ¶ 42. But even if Licona did not exercise reasonable care in his investigation of Ybarra's claims that Plaintiff was gang-affiliated, Cal. Government Code § 821.6 provides Licona with immunity from Plaintiff's negligence cause of action. For that reason, Plaintiff's second cause of action as alleged fails and must be dismissed.

    C. Liability of LASD

None of the SAC's four causes of action are specifically alleged against the LACSD. In her opposition to this Motion, however, Plaintiff asserts that LACSD is vicariously liable for Licona's negligence. *See* Opp'n at 7. Because the Court would dismiss the second cause of action for negligence against Licona, the Court would find that Plaintiff also fails to state a claim against LACSD.

    D. Leave to Amend

As a general rule, leave to amend a dismissed complaint should be freely granted. *See* Fed. R. Civ. P. 15(a). However, "[a] district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996)). The Court dismissed the FAC but permitted leave to amend for Plaintiff to allege facts sufficient to show that Licona effectuated an extrajudicial eviction of

Plaintiff from her home "because of animus towards her stemming from the fact that he repeatedly was called to the home to respond to allegations of domestic violence." Dismissal Order at 8. The Court concluded that if supported by factual allegations, that claim would not fail as a matter of law. *Id.* at 9. In the SAC, Plaintiff states that "Licona merely took Ybarra's allegation at face value and issued the EPO because he did not want to keep coming back to the Property." SAC ¶ 35. Other than that, Plaintiff fails to make any allegation as to what may have motivated Licona's actions. The Court would thus find that Plaintiff has utterly failed to cure the deficiencies it described in its previous Dismissal Order. As a result, the Court would find that Plaintiff has squandered her opportunity to cure and thus would not permit another. The Court would dismiss the first two causes of action without leave to amend.

   E. Remaining Causes of Action Against Ybarra

Having dismissed the first two causes of action, the sole remaining causes of action are for battery and constructive eviction against Ybarra. The Court's jurisdiction here was predicated on the presentation of a Federal Question − Plaintiff's Section 1983 claim − coupled with exercise of supplemental jurisdiction over the additional causes of action. "When the federal claim is dismissed early in the case, the federal court will be strongly inclined to dismiss the state law claims without prejudice rather than retaining supplemental jurisdiction." O'Connell & Stevenson, *Rutter Group Prac. Guide: Federal Civ. Proc. Before Trial* § 2:921 at 2B-86 (2017). Given the fact that this litigation is in its infancy, the Court would find that no compelling reason exists to continue to hear these state law claims between two California citizens and thus would dismiss the remaining causes of action without prejudice.

**IV. Conclusion**

Based on the foregoing discussion, the Court would grant the Motion − dismissing the first two causes of action without leave to amend. The Court would not exercise supplemental over the remaining two causes of action and therefore dismisses them without prejudice, and terminates this case.